J-A06024-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JENNA MOORE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN VIDOVICH | : | No. 697 WDA 2022 |

Appeal from the Order Entered May 12, 2022
In the Court of Common Pleas of Beaver County Civil Division at No(s):
2021-10452

BEFORE:   OLSON, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED:  April 4, 2023**

Jenna Moore (Mother) appeals from the May 12, 2022 order holding her in civil contempt of a prior custody order.  Mother contends that the trial court erred or abused its discretion in finding her in contempt and in setting the amount of monetary sanctions in the contempt order.  We affirm.

A previous panel summarized the factual and procedural history of this matter as follows:

> Mother and [John Vidovich (Father)] are the parents of two boys[1] [(collectively, the Children)], aged [three] and [five].  Father filed a petition for custody in March 2021, seeking shared legal and physical custody of the children.  Following a custody conference, the trial court entered its recommended order, awarding the parties shared legal custody and awarding Mother primary

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Both of the Children have the initials "K.V.," therefore we refer to the Children as "the older child" and "the younger child," respectively.

physical custody, subject to Father's periods of partial physical custody. On May 20, 2021, Father filed exceptions to the recommended order, seeking shared physical custody. Mother did not file exceptions. A trial was held on August 19, 2021, November 5, 2021, and January 28, 2022. Following trial, the trial court stated its findings and conclusions on the record, and these were incorporated into the written custody order entered on January 28, 2022. The custody order continued the parties' shared legal custody, maintained Mother as the primary physical custodian, and awarded Father an additional two overnights of custody.

*Moore v. Vidovich*, 217 WDA 2022, 2022 WL 15596051, at *1 (Pa. Super. filed Oct. 28, 2022) (unpublished mem.). Mother filed a timely appeal from the trial court's January 28, 2022 custody order. *Id.* This Court affirmed the custody order on October 28, 2022. *Id.* at *6.

Meanwhile, on April 21, 2022, Father filed a petition for contempt alleging that Mother had withheld custody of the Children from Father in violation of the custody order.[2] The trial court held a contempt hearing on May 10, 2022. At the outset, the trial court conducted an *in camera* examination of the older child.[3] At the hearing, Father testified that Mother

---

[2] Although Mother's appeal at 217 WDA 2022 was pending at the time Father filed his petition for contempt, the trial court had jurisdiction to consider the petition. **See** Pa.R.A.P. 1701(b)(2) (providing that after an appeal is taken, the trial court retains jurisdiction to "[e]nforce any order entered in the matter"); ***Travitzky v. Travitzky***, 534 A.2d 1081, 1084 n.3 (Pa. Super. 1987) (explaining that "trial court[s] possess inherent powers to enforce their orders and decrees by imposing sanctions for failure to comply with their orders. This power is retained even after an appeal is filed" (citations omitted)).

[3] We note that the notes of testimony from *in camera* questioning of the older child are not included as part of the certified record, but they are included as

first withheld custody of the Children in March of 2022. N.T. Hr'g, 5/10/22, at 13-16. Specifically, Father explained Mother did not bring the Children to the custody exchange on March 21, 2022 because the Children were sick. Although Father agreed to make up that period of custody at a later date, Father stated that he has not seen the Children since then. *Id.* at 34. Father also testified that his counsel had billed him $4,720.11 for work related to the custody dispute, filing the petition for contempt, and preparing for the contempt hearing. *Id.* at 20-23. A copy of the invoice for Father's attorney's fees was admitted as Father's Exhibit 2.[4] *Id.*

Mother admitted that she had not complied with the terms of the January 28, 2022 custody order and had been withholding custody of the Children from Father. *Id.* at 59. Mother stated that she has acted with the best interests of the Children in mind. *Id.* at 58. Mother explained that she was scared that Father would harm her and/or the Children. *Id.* at 52-53. Mother also indicated that she filed a petition for a protective order[5] in Ohio

_____

part of Mother's reproduced record. Father did not object to the accuracy of these notes of testimony. Because "their veracity is not in dispute, we rely on the copy contained within the reproduced record." *See C.L. v. M.P.*, 255 A.3d 514, 519 n.3 (Pa. Super. 2021) (*en banc*) (citation omitted).

[4] This invoice was not included in the certified record.

[5] Also known as a "domestic violence civil protection order." *See* N.T. Hr'g at 26; *see also* Ohio Rev. Code § 3113.31. This is similar to an order under Pennsylvania's Protection From Abuse (PFA) Act, 23 Pa.C.S. §§ 6101-6122.

where she resides. *Id.* at 16, 26, 50, 66-67. However, Mother's petition for a protective order was dismissed after she failed to appear for the hearing. *Id.* at 16, 26, 67.

On May 12, 2022,[6] the trial court issued an order in which it concluded that Mother was in contempt of the custody order because she had withheld custody of the Children from Father on three occasions in 2022: March 22 to 24, March 30 to 31, and April 1 to 3, 2022. Order, 5/12/22, at 1 (unpaginated). The trial court ordered Mother to pay Father's attorney's fees in the amount of $4,720 as a sanction and awarded Father make-up time with the Children on dates of Father's choosing. *Id.* at 1-2 (unpaginated).

Mother filed a timely notice of appeal, and both Mother and the trial court complied with Pa.R.A.P. 1925.

On appeal, Mother raises the following issues:

1. Whether the trial court abused its discretion and erred as a matter of law in issuing the order of court dated May 1[2], 2022.

2. Whether the trial court committed reversible error and abused its discretion when it ordered that [Mother] pay an excessively unreasonable and egregious fee in the amount of $4,720.00 for the attorney fees [Father] had to pay to bring his contempt petition against [Mother].

---

[6] We note that although the trial court's order is dated May 11, 2022, the record reflects that the trial court sent notice of the order to the parties on May 12, 2022. *See* Pa.R.A.P. 108(b); Pa.R.C.P. 236(b). We have amended the caption accordingly.

Mother's Brief at 2 (some formatting altered).[7]

## Contempt of Court

In her first issue, Mother argues that the trial court erred in finding her in contempt of the custody order. *Id.* at 7-16. Specifically, Mother claims that Father failed to prove by a preponderance of the evidence that she acted with wrongful intent.[8] *Id.* at 9-16. Mother claims that she did not act with wrongful intent when she failed to bring the Children to custody exchanges in March 2022 because Father agreed to cancel his periods of partial physical custody when the Children were ill. *Id.* at 11-12 (citing N.T. Hr'g at 42-45). Mother further contends that she did not act with wrongful intent in subsequently withholding custody of the Children from Father because she acted out of her concerns for the Children's safety. *Id.* at 12 (citing N.T. Hr'g at 46-49). Namely, Mother claims that Father failed to administer the

_____

[7] Mother additionally argues that the trial court erred in excluding her testimony about the older child's statements as hearsay because Mother was offering those statements to show the effect on her as the listener, not for the truth of the matter asserted. Mother's Brief at 12 n.2 (citing N.T. Hr'g 45-49). Mother also contends that the older child was not competent to testify because of his young age. *Id.* at 15. However, Mother has waived these issues because she did not raise them in her Rule 1925(b) statement or in the statement of questions involved. *See* Pa.R.A.P. 1925(b)(4)(vii) (stating that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived"), 2116(a) (providing that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby").

[8] Mother concedes that she had notice of the January 28, 2022 custody order and that she deliberately withheld custody of the Children from Father in violation of that order. Mother's Brief at 9.

- 5 -

Children's medication as prescribed, and that Father had engaged in abusive or threatening behavior towards the Children. *Id.* at 12-13 (citing N.T. Hr'g at 16, 28). Mother explains that because of her concerns for the Children's safety, she filed a petition for a restraining order in Ohio, where she resides. *Id.* at 13 (citing N.T. Hr'g at 51-52). Mother asserts that she also reported her concerns about Father's alleged abuse to Children and Youth Services in both Pennsylvania and Ohio. *Id.* at 13-14 (citing N.T. Hr'g at 49, 52). Additionally, Mother argues that the trial court improperly weighed the older child's testimony by disregarding the older child nodding his head affirmatively when the trial court asked him if Father had hurt him. *Id.* at 14-16 (citing N.T. *In Camera* Test., 5/10/22, at 9-10). Mother concludes that the trial court abused its discretion by holding her in contempt because she did not act with wrongful intent, and claims that the record establishes that she was "actively pursuing the assistance of the court system and independent agencies to address the welfare of . . . [C]hildren[.]" *Id.* at 14.

> We review Mother's claim bearing in mind the following principles:
>
> Our standard of review concerning a trial court's contempt findings is very narrow:
>
> This Court's review of a civil contempt order is limited to a determination of whether the trial court abused its discretion. If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused.

***Gross v. Mintz***, 284 A.3d 479, 489 (Pa. Super. 2022) (citation omitted and

formatting altered).

Additionally, this Court has explained:

Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. When reviewing an appeal from a contempt order, the [appellate] court must place great reliance upon the discretion of the trial judge. . . .

\*    \*    \*

This Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor.

***Harcar v. Harcar***, 982 A.2d 1230, 1235-36 (Pa. Super. 2009) (citations

omitted and formatting altered).

To sustain a finding of civil contempt, the complainant must prove certain distinct elements by a preponderance of the evidence: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. Moreover, a court may exercise its civil contempt power to enforce compliance with its orders for the benefit of the party in whose favor the order runs but not to inflict punishment. A party must have violated a court order to be found in civil contempt.

***Gross***, 284 A.3d at 489 (citations omitted and formatting altered); ***see also***

***Thomas v. Thomas***, 194 A.3d 220, 226 (Pa. Super. 2018) (explaining that

"a mere showing of noncompliance with a court order, or even misconduct, is

never sufficient alone to prove civil contempt" (citation omitted)); ***Sutch v.***

***Roxborough Mem'l Hosp.***, 142 A.3d 38, 68 (Pa. Super. 2016) (stating that

"[u]nless the evidence establishes an intentional disobedience or an intentional disregard of the lawful process of the [trial] court, no contempt has been proven" (citation omitted and formatting altered)).

"When making a determination regarding whether a defendant acted with wrongful intent, the court should use common sense and consider context, and wrongful intent can be imputed to a defendant by virtue of the substantial certainty that his [or her] actions will violate the court order." *Gross*, 284 A.3d at 492-93 (citation omitted and formatting altered).

In *Luminella v. Marcocci*, 814 A.2d 711 (Pa. Super. 2002), the trial court found the mother in contempt after she withheld custody of the parties' two youngest daughters from the father in violation of the parties' custody order. *Luminella*, 814 A.2d at 714-15. On appeal, the mother argued that she was not in willful contempt of the custody order because she feared for the children's safety while they were in the father's custody. *Id.* at 719. In rejecting the mother's claims, this Court explained:

> To accept [the m]other's argument is to accept anarchy. By relying on fears for the children's safety as a reason that she could not comply with the court order, [the] mother relies on factors she should have argued during the development of the custody order . . . . [The m]other is not permitted to ignore the order and unilaterally institute measures she feels appropriate instead of the order.

*Id.*

Here, the trial court explained:

> In the instant case, following a hearing where both parties testified as well as the parties' five (5) year old son, this court found that

- 8 -

the evidence established that [Mother] "intentionally withheld the [] Children from [Father] on March 22 - March 24, 2022; March 30 - 31, 2022; and, April 1 - April 3, 2022. The actions of [Mother] cannot be justified in light of her testimony and the testimony of the parties' five (5) year old son." [Order, 5/12/22, at 1 (unpaginated).]

Trial Ct. Op., 7/7/22, at 5-6 (footnote omitted and formatting altered).

Based on our review of the record, we discern no abuse of discretion by the trial court in holding Mother in contempt of the January 28, 2022 custody order.[9] *See Gross*, 284 A.3d at 489.

As noted previously, Mother claims that she did not act with wrongful intent in withholding custody from Father because she had concerns about the Children's safety and had been acting in the Children's best interest. *See* N.T. Hr'g at 52-53, 58-59. However, because there is no dispute that Mother violated the custody order, the trial court was permitted to find that Mother acted with wrongful intent. *See Gross*, 284 A.3d at 492-93 (stating that "wrongful intent can be imputed to a defendant by virtue of the substantial certainty that his [or her] actions will violate the court order"). Here, the trial court acted within its discretion in concluding that Mother's stated reasons for withholding custody of the Children from Father were belied by the record and that she disobeyed the custody order with wrongful intent. *See id.* at 489.

_____

[9] We note that Mother also contends the trial court erred because it failed to consider the best interest of the Children. Mother's Brief at 7 (citing *M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa. Super. 2013)). *M.J.M.* involved an appeal from a custody order, not a contempt order. *M.J.M.*, 63 A.3d at 334. As stated above, this Court applies a different standard when reviewing a contempt order. *See Gross*, 284 A.3d at 489.

Specifically, Mother claimed she withheld custody because she feared for Children's safety, but she failed to appear for the hearing on her petition for a domestic violence civil protection order in Ohio. *See* N.T. Hr'g, 5/10/22, at 16, 26, 67. Additionally, the trial court found the testimony of the older child to be credible. *See* Trial Ct. Op. at 5-6. Further, this Court has previously condemned such behavior by a parent. *See Luminella*, 814 A.2d at 719 (stating that a parent "is not permitted to ignore the order and unilaterally institute measures [the parent] feels appropriate instead of the order"). Finally, we note that the trial court's credibility determinations are supported by the record. *See Harcar*, 982 A.2d at 1236. Therefore, to the extent Mother claims that the trial court improperly weighed the older child's testimony, we will not reweigh or disturb the trial court's credibility determinations on appeal. *See id.* For these reasons, we find no error by the trial court in concluding that Mother acted with wrongful intent when she withheld custody of the Children from Father in violation of the January 28, 2022 custody order. Accordingly, Mother is not entitled to relief.

## Attorney's Fees

In her second issue, Mother argues that the trial court erred by ordering her to pay an unreasonable amount of attorney's fees as a sanction for her contempt. Mother's Brief at 16-21. Specifically, Mother contends that Father failed to provide sufficient evidence for the trial court to determine if the services billed by Father's counsel were reasonably necessary for the prosecution of Father's contempt petition. *Id.* at 19-20 (citing N.T. Hr'g at

20-23). Mother also claims that the trial court failed to determine if those billed services were necessary to enforce Mother's compliance with the custody order. *Id.* at 17-18. Additionally, Mother argues that the trial court erred by failing to consider her ability to pay before imposing the sanction. *Id.* at 20. Although Mother acknowledges that trial courts are not required to determine a contemnor's ability to pay a monetary sanction, she contends that this approach is unjust because it creates a situation where the contemnor is exposed to future sanctions because of an inability to pay the previous sanctions award. *Id.* at 20-21 (citing *Hopkins v. Byes*, 954 A.2d 654, 659 (Pa. Super. 2008)). Therefore, Mother concludes that the trial court erred in ordering her to pay $4,720 in attorney's fees to Father as a contempt sanction.

As stated above, we review a contempt order for an abuse of discretion. *See Gross*, 284 A.3d at 489; *see also Goodman v. Goodman*, 556 A.2d 1379, 1391 n.8 (Pa. Super. 1989) (stating that "[i]n reviewing a grant of attorney's fees, we will not disturb the decision below absent a clear abuse of discretion" (citations omitted)).

> Although the responsibility for setting counsel fees lies primarily with the trial court, this Court has the power to reverse that exercise when there is plain error. Plain error is found where the award is based either on factual findings for which there is no evidentiary support or on legal factors other than those that are relevant to such an award.

*Sutch*, 142 A.3d at 70 (citations and quotation marks omitted)).

- 11 -

The Child Custody Act provides that a court may impose an award of "counsel fees and costs" after finding a party in contempt of a custody order. 23 Pa.C.S. § 5323(g)(1)(v). Additionally, the Child Custody Act states that "a court may award reasonable interim or final counsel fees, costs and expenses to a party if the court finds that the conduct of another party was obdurate, vexatious, repetitive or in bad faith." 23 Pa.C.S. § 5339. Further, when determining the reasonableness of a request for attorney's fees, the trial court must consider several factors, including "the reasonableness of time spent by counsel in relation to the particular case." *Sutch*, 142 A.3d at 70 (citation omitted).

In *Hopkins*, this Court rejected an argument that a trial court must determine the contemnor's ability to pay the injured party's attorney's fees before the court can impose counsel fees as a sanction for contempt of custody order. *Hopkins*, 954 A.2d at 659.

Here, the trial court explained its award of sanctions as follows:

Pursuant to 23 Pa.C.S. § 5323(g)[(1)](v), this court ordered [Mother] to pay [Father's] counsel fees in the amount of $4,720.00.[FN9] This court imposed this sanction of counsel fees in order to compensate [Father] "for the attorney fees he had to pay to bring this petition concerning [Mother's] contemptuous and dilatory conduct[,]" and not as a punitive sanction. [Order, 5/12/22, at 1 (unpaginated).] As such, this court did not abuse its discretion in finding [Mother] in contempt, nor did it abuse its discretion in ordering [Mother] to pay [Father's] counsel fees incurred in bringing and litigating his contempt petition.

[FN9] This court maintains that these counsel fees are not excessive, unreasonable, nor egregious.

Trial Ct. Op. at 6 (citations and some footnotes omitted).

Here, Father testified that his attorneys billed him $4,720.11 for work performed in connection with these contempt proceedings and submitted an invoice from his attorneys. *See* N.T. at 20-23. Father further explained that his counsel had redacted all fees related to Mother's appeal from the January 28, 2022 custody order, which was also pending at that time. *See id.* at 20-21. Based on the evidence presented at the hearing, we discern no abuse of discretion or plain error in the trial court's conclusion that these fees were reasonable to compensate Father for expenses incurred as a result of Mother's contempt. *See Goodman*, 556 A.2d at 1391 n.8 (explaining that "an award of counsel fees is intended to reimburse an innocent litigant for expenses made necessary by the conduct of an opponent, [and that] it is coercive and compensatory, [but] not punitive" (citations omitted and formatting altered)); *see also Gross*, 284 A.3d at 489; *Sutch*, 142 A.3d at 70.

Further, to the extent Mother claims that the trial court should have considered her ability to pay Father's attorney's fees before imposing them as a sanction for contempt, she is not entitled to relief. As noted previously, this Court has held that trial courts are not required to consider a contemnor's ability to pay before imposing attorney's fees as a sanction. *See Hopkins*, 954 A.2d at 659. It is well-established that a three-judge panel of this Court panel does not have the power to overrule a prior, precedential decision of this Court, "except in circumstances where intervening authority by our Supreme Court calls into question a previous decision of this Court." *E.C.S.*

*v. M.C.S.*, 256 A.3d 449, 456 (Pa. Super. 2021) (citation omitted and formatting altered). Therefore, we are bound by *Hopkins* and conclude that the trial court did not abuse its discretion by ordering Mother to pay Father's attorney's fees as a contempt sanction without first assessing Mother's ability to pay those fees. *See id.*; *Hopkins*, 954 A.2d at 659; *Goodman*, 556 A.2d at 1391 n.8.

For these reasons, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/4/2023